Kathryn SCOTT, Claimant–Respondent,

v.

**ELDERLITE EXPRESS,**
**Employer–Appellant.**

**No. ED 84311.**

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 2, 2004.

Peter S. Maher, St. Louis, MO, for appellant.

Mark R. Bahn, Fenton, MO, for respondent.

LAWRENCE E. MOONEY, P.J.

The employer, Elderlite Express, appeals from a decision by the Labor and Industrial Relations Commission (Commission) awarding the claimant, Katherine Scott, workers' compensation benefits. At issue is the Commission's jurisdiction, which is dependent on whether the contract of employment between the claimant and the employer was made in Missouri or in Indiana. Because the last act necessary to complete the employment contract occurred in Indiana, the Commission lacked jurisdiction. Accordingly, we reverse the Commission's decision.

In July 1998, the claimant was working for the employer as a truck driver. On July 20, 1998, the claimant injured her wrist while unloading a truck in Tacoma, Washington. Thereafter, the claimant filed a claim for workers' compensation benefits with the Missouri Division of Workers' Compensation.

At the hearing before an administrative law judge (ALJ), the parties stipulated that the employer had paid $13,427.67 in temporary total disability benefits and $20,825.68 in medical benefits. The parties also stipulated that these payments were made under Indiana's workers' compensation law.

The claimant testified at the hearing as follows. In May 1998, she and her husband were driving over-the—road as a team for a trucking company. At some time in May or June 1998, the claimant's husband telephoned Glen Craig, the employer's safety director-recruiter, about them working for the employer driving over-the-road as a team. The claimant's husband informed Mr. Craig of their drivers' license and social-security numbers and where he and the claimant had previously worked. Thereafter, the claimant and her husband received employment applications at their home in Festus, Missouri, which they faxed back to the employer. At some later time, Mr. Craig called the claimant's husband at home. After this conversation, the claimant's husband told her "we were hired and that I should contact Misty for orientation." The claimant called Misty and set up orientation. At that point, the claimant "definitely" believed she had been hired by the employer. The claimant and her husband went to Richmond, Indiana for the three-day orientation that began June 23, 1998. During the orientation, the claimant passed a drug-screening and driving test. The employer paid for the claimant's hotel during the orientation and paid her wages for the three days. After completing the orientation, the claimant and her husband began driving a truck for the employer. On July 28, 1998, the claimant injured her wrist while unloading a truck in Tacoma, Washington.

During cross-examination, the claimant was questioned about her previous deposition where she stated that part of applying for the job was completing a drug test.

The claimant also conceded during this deposition that "[y]ou have to take a drug test to be a truck driver," and, if you fail the drug test, you do not go to work. The ALJ admitted the deposition into evidence.

The claimant's husband's testimony was similar to that of the claimant regarding the events leading up to them going to Indiana for orientation. He also believed that he and the claimant had been hired prior to going to orientation. At one point, the claimant's husband was asked what specific statements regarding employment Mr. Craig made during their second telephone conversation. The ALJ sustained the employer's objection to this question. In a later offer of proof, the claimant's counsel stated that the claimant's husband would have testified that when he spoke with Mr. Craig the second time he said that they were hired and should report to Indiana for their employment.

At the hearing, the deposition of Tiffany Clark, the employer's current safety director-recruiter, was admitted into evidence. Although Ms. Clark was not working for the employer in 1998, she testified regarding federal regulations for over-the—road truck drivers and read two regulations from a "Pocketbook" that were entered as exhibits. The first exhibit, 49 C.F.R. section 382.301 is titled "Pre-employment testing," and addresses testing for controlled substances "[p]rior to the first time a driver performs safety-sensitive functions for an employer." The second exhibit 49 C.F.R. section 391.31 is titled "Road test," and states in part that, with certain exceptions, a person shall not drive a commercial vehicle unless the person has successfully completed a road test. Ms. Clark stated that truck drivers must pass the two tests before they are hired.

The ALJ concluded that the employment contract was made in Indiana and therefore Missouri's workers' compensa-tion law does not apply. The ALJ stated that *Whitney v. Country Wide Truck Service, Inc.*, 886 S.W.2d 154 (Mo.App. E.D. 1994), *overruled in part on other grounds, Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 228 (Mo. banc 2003), was "squarely on point both as to facts and law." The Commission reversed the ALJ's decision. The Commission concluded that the claimant's husband's testimony regarding what Mr. Craig said during their second conversation was admissible. The Commission further concluded that the last act necessary to complete the employment contract occurred in Missouri during the second telephone conversation between Mr. Craig and the claimant's husband and when the claimant "scheduled orientation with the recruiter." The Commission found that the claimant sustained 20 % permanent partial disability at the level of the right wrist and awarded benefits. The employer appeals.

■ On appeal from the Commission's final award, this Court may modify, reverse, remand for rehearing, or set aside the award only if the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to warrant the making of the award. Section 287.495 RSMo.2000. We examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, that is, whether the award is contrary to the overwhelming weight of the evidence. *Hampton*, 121 S.W.3d at 222–23.

■ Section 287.110.2 provides:
This chapter [the Workers' Compensation Law] shall apply to all injuries received and occupational diseases contracted in this state, regardless of where the contract of employment was made, and *also to all injuries received and*

*occupational diseases contracted outside of this state under contract of employment made in this state,* unless the contract of employment in any case shall otherwise provide, and also to all injuries received and occupational diseases contracted outside of this state where the employee's employment was principally localized in this state.

(Emphasis added). Under this section, if the employment contract was made in Missouri, then this state's workers' compensation law applies to the claimant's injury occurring in Tacoma, Washington.

 "[F]or a contract to be formed, there must be a meeting of the minds of the parties, to the contract regarding the same thing, at the same time." *Whitney,* 886 S.W.2d at 155. In determining where the minds of the parties met, the trier of fact must consider all of the facts and circumstances and the parties' conduct. *Id.* It is generally assumed that the contract was made at the place where the last act necessary to complete the contract was performed. *Id; Whiteman v. Del–Jen Constr., Inc.,* 37 S.W.3d 823, 831 (Mo.App. W.D.2001), *overruled in part on other grounds, Hampton,* 121 S.W.3d at 225.

In both points, the employer argues that the Commission lacked jurisdiction. The employer contends that regardless of the telephone conversations, the employer did not extend an unconditional offer of employment to the claimant as she knew at the time of the conversations that she had to pass the employer's mandatory driving test and drug screening. The employer also contends that the Commission failed to follow this Court's decision in *Whitney.*

In *Whitney,* the appellant, a Missouri resident, went to California to apply for a job as a truck driver. 886 S.W.2d at 154. When she returned to Missouri, she spoke on the telephone with the company's representative who indicated the company's "intention" to hire her. *Id.* She was told to report to the company's facility in Knoxville, Tennessee for a drug test, road test and orientation. *Id.* at 154–55. After she successfully completed the tests and orientation, she began driving a truck for the company. *Id.* at 155. She was subsequently injured when she was involved in an accident in Arkansas while driving for the company. *Id.* The appellant filed a claim for compensation with the Missouri Division of Workers' Compensation. *Id.* The Commission affirmed the ALJ's finding that the Division lacked jurisdiction and the appellant appealed. *Id.* In affirming the Commission's decision, this Court stated that "[i]t was only after appellant arrived in Tennessee and successfully completed the drug test, road test, and orientation that she was assigned a truck and sent out on the road. As such, we find the last act necessary to complete the contract to have been performed in Knoxville, Tennessee." *Id.* at 155–56.

Here, the claimant acknowledged during a deposition that part of applying for the job was completing a drug test. The claimant also stated that it is necessary to pass a drug test to be a truck driver, and you do not go to work if you fail the test. In addition, the claimant did not begin driving a truck for the employer until she passed the drug screening and road test. Therefore, applying the analysis set forth in *Whitney,* the last act necessary to complete the employment contract was performed in Indiana. Accordingly, Missouri's workers' compensation law does not apply.

The decision of the Commission is reversed.

LAWRENCE G. CRAHAN and MARY K. HOFF, JJ., concur.