**Frank FORSHEE, Respondent,**

v.

**LANDMARK EXCAVATING AND EQUIPMENT, Appellant,**

and

**Treasurer of Missouri, Custodian of the Second Injury Fund, Respondent.**

**No. ED 85582.**

Missouri Court of Appeals, Eastern District, Division One.

June 28, 2005.

Heidi A. Jennings, Kortenhof & Ely, P.C., St. Louis, MO, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Laura C. Wagener, Asst. Attorney General St. Louis, MO, for respondent.

GARY M. GAERTNER, Presiding Judge.

Appellant, Landmark Excavating and Equipment ("Employer"), appeals the final award of the Labor and Industrial Relations Commission ("the Commission") granting Respondent, Frank Forshee ("Claimant"), permanent total disability benefits and future medical care. We affirm.[1]

---

1. Employer's motion to strike is hereby denied.

Claimant was born on January 14, 1940, and completed the eighth grade, but never attended high school nor did he obtain a GED. Claimant's only adult work has been as a mechanic and a carpenter. Claimant started working as a carpenter performing residential construction for Employer in or about 1993. On November 21, 2000, while working at a new home construction site, Claimant stepped in a hole in the floor causing him to fall into a stairwell and hang by his left leg. He was taken to the emergency room at St. Anthony's Hospital. Claimant was diagnosed with a dislocated left shoulder. An MRI of Claimant's knee was prescribed by Dr. Herbert Haupt, an orthopedic surgeon. On December 7, 2000, Dr. Haupt noted that the MRI revealed evidence of tears of the medial collateral and anterior cruciate ligaments, and a probable tearing of both the medial and lateral meniscus. Claimant also suffered nerve damage as a result of the left shoulder injury. Claimant later had arthroscopic surgery performed on his left knee, and underwent physical therapy for his shoulder and his knee.

Claimant returned to perform part-time light duty work for Employer from June 1, 2001 until September 14, 2001. During the time he performed light duty work, Claimant ran errands for materials, and cleaned the barbecue grill, tables, and chairs at the Employer's clubhouse. Claimant was fired on September 14, 2001 as a result of a lack of light duty work for him to perform.

On May 7, 2001, Claimant filed a workers' compensation claim against Employer alleging that while working for Employer on November 21, 2000 he injured his left knee and left shoulder as a result of stepping in a hole and falling. Claimant also filed a workers' compensation claim against the Second Injury Fund.

On November 24, 2003, a hearing was conducted before Administrative Law Judge Leslie Brown ("the ALJ"). Claimant testified that he did not have any problems with his left knee or left shoulder before the November 21, 2000 accident. Claimant admitted that, before the accident, he had suffered from almost total blindness in his left eye, sleep apnea, bilateral carpal tunnel syndrome, and high blood pressure. Claimant also had endured trigger finger repair and bilateral hernia repairs. However, Claimant stated that after receiving treatment for these setbacks, he never had any work restrictions upon returning to work.

On July 1, 2004, the ALJ issued her decision finding Employer liable for permanent total disability benefits and future medical care. On November 24, 2004, the Commission affirmed the award of the ALJ and incorporated her award by reference into the final award allowing for compensation. Claimant was found to be permanently and totally disabled as result of the work injuries suffered on November 21, 2000. Employer was ordered to pay Claimant permanent total disability benefits at the rate of $435.77 per week beginning March 6, 2002 and continuing throughout Claimant's life. Further, Claimant was awarded future medical care as a result of his work injury. The Second Injury Fund was found to be not liable for any payments to Claimant. This appeal followed.

We will uphold the award of the Commission if there is sufficient competent and substantial evidence to support the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo.banc 2003). An award is not supported by competent and substantial evidence if it is contrary to the overwhelming weight of the evidence. *Id.* at 223.

We address Employer's second point on appeal before addressing Employer's first point on appeal. In its second

point on appeal, Employer asserts the Commission erred in determining that Claimant is permanently and totally disabled due to the November 21, 2000 injuries alone.

■■■ The test for permanent total disability is the claimant's ability to compete in the open labor market. *Sutton v. Vee Jay Cement Contracting Co.*, 37 S.W.3d 803, 811 (Mo.App. E.D.2000). The critical question is whether an employer could reasonably be expected to hire the claimant, considering his present physical condition, and reasonably expect him to successfully perform the work. *Id.* The credible testimony of a claimant concerning work-related functioning can constitute competent and substantial evidence. *Hampton*, 121 S.W.3d at 223–24.

Claimant stated that, as a result of pain in his left knee, he has a difficult time sitting for more than 30 or 45 minutes consecutively and he also has difficulty standing in one place for a little less time than that. Claimant testified that he can only walk a couple of blocks without having to stop because of aching pain in his knee. Claimant further revealed that, as a result of his left shoulder pain, he cannot even raise his left hand to his ear. Claimant was found to be a credible witness. In addition, Dr. David Volarich testified that Claimant is permanently and totally disabled as result of his November 21, 2000 work injuries standing alone. Mr. Timothy Lalk, a vocational rehabilitation counselor, testified that Claimant is unable to secure and maintain full-time employment in the open labor market as a result of the November 2000 injuries. Therefore, the Commission's finding that Claimant is permanently and totally disabled as a result of the November 2000 injuries is supported by sufficient competent and substantial evidence. Point denied.

■ In its first point on appeal, Employer argues that the Commission erred in determining liability of the Second Injury Fund before determining liability of Employer. Employer claims that section 287.220 RSMo 2000 [2] requires the Commission to first determine Employer liability before determining Second Injury Fund liability.

■■■ In determining whether the Second Injury Fund has any liability, the first finding is the degree of disability from the last injury considered alone. *Landman v. Ice Cream Specialties, Inc.*, 107 S.W.3d 240, 248 (Mo.banc 2003). If the last injury in and of itself renders the employee permanently and totally disabled, then the Second Injury Fund has no liability and the employer is responsible for the entire amount of compensation. *Id.* Until the degree of disability from the last injury is established, Second Injury Fund liability cannot be determined. *Hughey v. Chrysler Corp.*, 34 S.W.3d 845, 847 (Mo.App. E.D.2000), *quoting Stewart v. Johnson*, 398 S.W.2d 850, 854 (Mo.banc 1966). Harmless error is not considered a ground for reversal. *Mirth v. Regional Bldg. Inspection Co.*, 93 S.W.3d 787, 789 (Mo.App. E.D.2002), *quoting Fowler v. S–H–S Motor Sales Corp.*, 560 S.W.2d 350, 358 (Mo.App. W.D.1977).

■ In this case, the Commission did format their decision in such a way that its finding that the Second Injury Fund was not liable came before determining the degree of disability from the November 2000 injuries alone. However, the Commission did subsequently make the relevant finding that Claimant was permanently and totally disabled as result of the November 2000 work related accident considered alone. Because the Commission determined that the November 2000 inju-

**2.** All statutory references are to RSMo 2000     unless otherwise indicated.

ries alone caused permanent and total disability, the Commission properly found that only Employer was liable for the disability. Therefore, even though the Commission erred in finding that the Second Injury Fund was not liable before determining the degree of disability from the November 2000 injuries alone, this error was harmless because the Commission's next finding was that Claimant was permanently and totally disabled as a result of the November 2000 injuries alone. Point denied.

In its third point on appeal, Employer contends the Commission erred in utilizing the "industrial disability" standard in determining liability of Employer and the Second Injury Fund. Employer contends that the "industrial disability" standard was superseded by the 1993 amendment to section 287.220.1.

Under the old "industrial disability" standard, if a claimant could not establish that he had a preexisting disability which was either "industrial" or related to his "loss of earning capacity," the claimant could not collect from the Second Injury Fund. *Leutzinger v. Treasurer*, 895 S.W.2d 591, 592 (Mo.App. E.D.1995). The judicial construction of the "industrial disability" standard was superseded on August 28, 1993, when section 287.220.1 was amended to make it clear which pre-existing conditions would be considered serious enough to trigger Second Injury Fund liability. *Id.* at 592–93. However, pre-existing disabilities are irrelevant until the employer's liability for the last injury is decided. *Landman*, 107 S.W.3d at 248. If the last injury in and of itself renders the employee permanently and totally disabled, then the Second Injury Fund has no liability and the employer is responsible for the entire amount of compensation. *Id.*

Employer does not point to even one reference to the old "industrial disability" standard or to any case law defining this now extinct standard within the Commission's decision. Regardless, as was stated above, the Commission made the finding that Claimant is permanently and totally disabled solely as a result of the November 21, 2000 injury. This finding eliminates any potential liability of the Second Injury Fund. Thus, even assuming *arguendo* that the Commission improperly used the "industrial disability" standard in analyzing Claimant's pre-existing disabilities, this is irrelevant because pre-existing injuries do not need to be examined if the last injury, considered alone, causes permanent and total disability. Therefore, the court did not err in determining liability of Employer and the Second Injury Fund. Point denied.

In its fourth point on appeal, Employer maintains the Commission erred in finding that Claimant is entitled to unlimited future medical care for his left shoulder and left knee injuries suffered as a result of the November 21, 2000 accident.

In order to prove entitlement to an award of future medical care, the claimant must establish a reasonable probability that he will need future medical care. *Chatmon v. St. Charles County Ambulance*, 55 S.W.3d 451, 459 (Mo.App. E.D. 2001). A claimant does not have to provide evidence of specific medical treatments or procedures which will be necessary in the future in order to receive an award of future medical care. *Polavarapu v. General Motors Corp.*, 897 S.W.2d 63, 66 (Mo.App. E.D.1995).

Employer admits that the evidence supports, at the least, liability for future medical care consisting of anti-inflammatories and braces. Furthermore, Dr. Volarich testified, to a reasonable degree of medical certainty, that the arthritis and instability in Claimant's knee will worsen over time, and, in the future, he will need medications, physical therapy, and possibly

even surgery. Therefore, sufficient competent and substantial evidence exists to support the award of future medical care. Point denied.

SHERRI B. SULLIVAN and BOOKER T. SHAW, JJ., concur.